UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HOLLY E. HOPKINS,

       Plaintiff,

v.                 6:13-CV-1082
                     (GTS)
COMM'R OF SOC. SEC.,

       Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br> Counsel for Plaintiff<br>One Park Place<br>300 South State St., Ste. 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br> Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | LAUREN E. MYERS, ESQ. |

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

   Currently before the Court, in this Social Security action filed by Holly E. Hopkins ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on December 25, 1968. (T. 134.) She received a GED. (T. 150.) Generally, Plaintiff's alleged disability consists of shoulder injury, neck injury, and depression. (T. 149.) Her alleged disability onset date is February 1, 2008. (T. 146.) She had previous work experience as a cutter, feeder/packer, housekeeper, and maintenance worker. (T. 150.)

### B. Procedural History

On December 30, 2010, Plaintiff applied for disability insurance benefits ("SSD") under Title II of the Social Security Act. (T. 120.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 27, 2012, Plaintiff appeared before the ALJ Marie Greener. (T. 32-54.) On June 18, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-31.) On July 16, 2013, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 22-31.) First, the ALJ found Plaintiff met the insured status through March 31, 2013 and had not engaged in substantial gainful activity since February 1, 2008, her alleged onset date. (T. 22.) Second, the ALJ found that Plaintiff had the severe impairments of herniated nucleus pulposus, degenerative disc disease of the cervical spine, status post cervical fusion in the past, and left shoulder injury

status post-surgery. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 23.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work," except, Plaintiff was unable to lift above shoulder level with the left upper extremity.[1] (*Id.*) Fifth, the ALJ determined that Plaintiff could not perform her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 26.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Richard Nocella, D.O. (Dkt. No. 11 at 16-19 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ erred in assessing Plaintiff's credibility, because she mischaracterized Plaintiff's testimony. (*Id.* at 19-22.) Third, and lastly, Plaintiff argues the ALJ's step five determination was unsupported by substantial evidence, because she failed to obtain vocational expert ("VE") testimony, despite the presence of significant non-exertional impairments. (*Id.* at 22-25.)

### B. Defendant's Arguments

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

In response, Defendant makes essentially two arguments. First, Defendant argues Plaintiff retained the RFC for sedentary work. (Dkt. No. 12 at 5-11 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues that Plaintiff retained the ability to perform work that existed in significant numbers in the national economy. (*Id.* at 11-13.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

5

the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Evaluated the Opinion of Plaintiff's Treating Physician, Dr. Nocella.

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 16-19 [Pl.'s Mem. of Law]). The Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight to afford a medical opinion, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2). An ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Charter*, 221 F.3d 126, 134 (2d Cir. 2000) (*quoting Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

On March 6, 2012, Dr. Nocella completed a medical source statement. (T. 411-413.) Dr. Nocella opined that Plaintiff suffered from a fractured cervical spine and left shoulder impairment of the acromioclavicular ("AC") joint. (T. 411.) He stated Plaintiff's prognosis was "fair." (*Id.*)

Regarding exertional limitations, Dr. Nocella observed that Plaintiff could frequently lift and carry up to ten pounds, could occasionally lift and carry twenty pounds, and could never lift and carry fifty pounds. (T. 412.) Dr. Nocella observed that Plaintiff could sit for more than two hours at a time in an eight hour work day and stand for more than two hours at a time in an eight hour workday. (T. 411.) He opined that in an eight hour workday, Plaintiff could stand/walk for about four hours total and sit at least six hours total. (*Id.*) Dr. Nocella indicated that Plaintiff would require a job that permitted shifting positions at will from sitting, standing or walking. (*Id.*) He opined that Plaintiff would take more than five unscheduled breaks in an eight hour workday lasting five to ten minutes each. (*Id.*)

In terms of non-exertional limitations, Dr. Nocella opined that Plaintiff could rarely look down, rarely turn her head right or left, and rarely look up; however, she could frequently hold her head in a static position. (*Id.*) Dr. Nocella observed that Plaintiff could frequently twist, and frequently climb stairs; she could occasionally stoop/bend and occasionally crouch/squat; but she could never climb ladders. (*Id.*) Regarding use of her hands, Dr. Nocella opined Plaintiff could rarely grasp, turn, and twist objects.[2] (*Id.*) He opined she could frequently use her fingers for fine manipulation. (*Id.*) Further, he stated Plaintiff could frequently reach with her arms; however, she could only reach

---

[2] The ability to handle objects includes the ability to seize, hold, grasp, turn, or "otherwise work with the whole hand or hands." SSR 85-15, 1985 WL 56857 (1985). The use of the arms and hands is needed to grasp and to hold and turn objects. SSR 83-10, 1983 WL 31251 (1983). Fine movements of small objects requires use of the fingers (pick, pinch). SSR 96-9p, 1996 WL 374185 (July 2, 1996).

7

with her left arm if it was not bearing weight. (*Id.*) Overall, Dr. Nocella opined Plaintiff would be off task (unable to maintain attention or perform at a consistent pace) for 20% of the time during an eight hour workday and Plaintiff would be absent from work approximately four days per month as a result of her impairments. (*Id.*)

The ALJ acknowledged Dr. Nocella as Plaintiff's treating physician and provided "great weight" to the majority of the limitations he imposed on Plaintiff in his medical source statement. (T. 25.) However, the ALJ provided "no weight" to Dr. Nocella's opinion that Plaintiff could rarely grasp, turn, and twist objects. (*Id.*) The ALJ reasoned that the record was "absent" evidence to support this conclusion. (*Id.*) The ALJ also provided Dr. Nocella's opinion that Plaintiff would be absent four times a month "no weight," reasoning that there was "nothing in the record" to support this conclusion. (*Id.*)

The ALJ erred in rejecting Dr. Nocella's assessment regarding Plaintiff's significantly reduced ability to grasp, turn, and twist objects solely based on the perceived lack of supportive evidence. The Second Circuit has held that "the lack of specific clinical findings in the treating physician's report did not, standing by itself, justify the ALJ's failure to credit the physician's opinion." *Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir. 1998). Here, the only support the ALJ provided for her complete rejection of Dr. Nocella's opinion regarding Plaintiff's limitations in her ability to handle objects, was that the record was absent any evidence of Plaintiff's problems handling. (T. 25.) Further, as Plaintiff correctly argues, medical evidence supports Dr. Nocella's assessment. (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].) For example, Albert Kochersperger, M.D. performed an exam in March of 2012, during which he noted reduced grip strength in Plaintiff's left hand. (T. 415.) He also noted reduced range of

8

motion in Plaintiff's left shoulder and opined she had a 40% loss of the use of her left arm. (*Id.*)

Defendant counters that the ALJ properly afforded Dr. Nocella's opinion regarding Plaintiff's limited ability to grasp, turn, and twist, "no weight" because the ALJ properly reasoned his opinion was not supported by the record. (Dkt. No. 12 at 6 [Def.'s Mem. of Law].) However, the ALJ specifically stated Dr. Nocella's assessment of Plaintiff's limited ability to grasp, turn, and twist objections was entitled to "no weight," because "[t]he record is *absent* any evidence of problems with grasping, turning and twisting objects." (emphasis added) (T. 25.) To reason that the record was inconsistent with Dr. Nocella's findings, or not supportive of his findings, is vastly different than to reason the record was absent supporting evidence. An analysis of whether or not a treating source's medical opinion was consistent with the record was proper under the Regulations. 20 C.F.R. § 404.1527(c)(2). However, to discredit a treating physician's opinion reasoning only that the record is absent support is improper because "failure to include . . . support for the findings in his report does not mean that such support does not exist." *Clark,* 143 F.3d at 118 (2d Cir. 1998).

Therefore, this matter is remanded for the appropriate evaluation of Dr. Nocella's opinion regarding Plaintiff's limitations in her ability to handle objects, because the ALJ failed to provide a proper analysis for rejecting this opinion and the ALJ ignored medical evidence which supported Dr. Nocella's opinion.

Second, Plaintiff argues the ALJ failed to properly evaluate, or even mention, Dr. Nocella's opinion regarding Plaintiff's reduced ability to maneuver her neck and head. (Dkt. No. 11 at 18 [Pl.'s Mem. of Law].) To be sure, the ALJ is not required to explicitly set forth and analyze every piece of evidence in the record. *Monguer v. Heckler*, 722

9

F.2d 1033, 1040 (2d Cir. 1983). Further, this Court agrees with Defendant that an ALJ "is not required to discuss all the evidence submitted, and her failure to cite specific evidence does not indicate that it was not considered." *Barringer v. Comm'r of Soc. Sec.,* 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (*quoting Craig v. Apfel*, 212. F.3d 433, 436 (8th Circ. 2000)). Although an ALJ need not discuss every shred of evidence, failure to discuss evidence that conflicts with an ALJ's finding prevents meaningful review.

Here, the ALJ specifically outlined the portion of Dr. Nocella's opinion she afforded "great weight," specifically outline the portion of Dr. Nocella's opinion she afforded "no weight," and then provided no discussion of Dr. Nocella's limitations regarding Plaintiff's reduced ability to maneuver her head and neck.[3] (T. 25.) Dr. Nocella stated Plaintiff could rarely look down, rarely turn head right or left, and rarely look up. (T. 412.)

The Regulations and Social Security Rulings provide the exertional and non-exertional requirements of sedentary work. *See, e.g.,* 20 C.F.R. 404.1567(a), SSR 83-10, 1983 WL 31251 (1983), SSR 83-12, 1983 WL 31253 (1983) and SSR 96-9p, 1996 WL 374185 (July 2, 1996). However, the Regulations and Rulings are essentially silent regarding non-exertional limitations imposed by an inability to maneuver the neck and head. Therefore, this Court cannot reasonably conclude that any limitations imposed by Plaintiff's inability to move her head/neck were inherently included in the ALJ's RFC analysis.

The lack of discussion regarding Plaintiff's limitations in movement of her neck and head, calls into question whether the decision was actually based on substantial evidence. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 262 (N.D.N.Y. 2010) (*quoting Schmidt*

---

[3] The ALJ also failed to discuss Dr. Nocella's observation that Plaintiff would require a sit/stand at will option.

*v. Astrue,* No. 07–CV–65, 2008 WL 1774381, at * 12 (N.D.Ind. Apr. 15, 2008)) (concluding that "although the ALJ need not discuss every piece of evidence ... the ALJ may not ignore an entire line of evidence that is contrary to the ruling, [o]therwise it is impossible for the reviewing court to tell whether the ALJ's decision rests upon substantial evidence"). The ALJ's failure to discuss specific limitations involving Plaintiff's head and neck are particularly erroneous here because the ALJ found at step two that Plaintiff had the severe impairment involving her cervical spine. (T. 22.) Therefore, remand is appropriate so that the ALJ can provide a complete discussion and analysis of Dr. Nocella's opinion.

### B. Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 19-22 [Pl.'s Mem. of Law]). The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, No. 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (T. 23-24.)

To be sure, although a "[plaintiff's] credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." *Gehm v. Astrue,* No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); *see also Patterson v. Astrue,* No. 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013)

("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination."). Courts have concluded that despite this language, an ALJ's credibility determination may still be proper, if the ALJ provided a detailed discussion of Plaintiff's credibility "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

Here, the ALJ failed to provide enough specificity in her decision to enable the Court to decide whether there were legitimate reasons for her disbelief. The ALJ's credibility analysis appears to be contained to the following statement:

> At the hearing, the [Plaintiff] testified that she spends time on her computer throughout the day with social networking, games and e-mailing. She also reported that she gardens; however, she has to sit on the ground and only use small tools. She testified that she will occasionally crochet. These activities are not inconsistent with the sedentary residual functional capacity.

(T. 25-26.)

Plaintiff argues the ALJ mischaracterized Plaintiff's testimony and failed to discuss other relevant testimony, specifically Plaintiff's limitations involving her arms.[4] (Dkt. No. 11 at 19-22 [Pl.'s Mem. of Law].) Defendant counters that Plaintiff's testimony was consistent with sedentary work and the ALJ did acknowledge Plaintiff's limitations in the use of her left arm. (Dkt. No. 12 at 10 [Def.'s Mem. of Law].)

---

[4] Although not alleged by Plaintiff, this Court is also hard pressed to decipher from the ALJ's credibility analysis any discussion of Plaintiff's credibility in relation to the objective medical evidence in the record pursuant to 20 § C.F.R. 404.1529(c)(2).

13

The ALJ's narrow credibility analysis mischaracterized Plaintiff's testimony regarding her activities of daily living. Plaintiff testified at the hearing she goes on the computer "occasionally," and if she's "up to it" she will try to crochet. (T. 45.) Plaintiff later explained that she hadn't crocheted in six to seven months (T. 48) and when she did crochet she needed to take a break every five to ten minutes (T. 49). Plaintiff testified that vacuuming and sweeping were difficult, but she could use a Swiffer mop one handed. (T. 49.) Plaintiff testified that she "can't hardly" garden. (T. 47.) From this testimony, the ALJ concluded that Plaintiff used the computer throughout the day and occasionally crochets. (T. 25.) The ALJ stretched the limited testimony she relied on in order to fit her RFC determination that Plaintiff could perform sedentary work.

Further, as the Plaintiff argues, the ALJ failed to discuss other portions of Plaintiff's testimony. (Dkt. No. 11 at 21 [Pl.'s Mem. of Law].) Again, this Court recognizes an ALJ need not discuss every piece of evidence. *See Monguer*, 722 F.2d at 1040. However, in this case, the ALJ limits her credibility analysis to Plaintiff's testimony regarding her use of hands. (T. 25-26.) On remand the ALJ is directed to conduct a proper credibility determination in accordance with the Regulations; specifically, to analyze Plaintiff's testimony in light of the objective medical evidence, provide a proper analysis of Plaintiff's testimony regarding her activities of daily living, and to provide an analysis of Plaintiff's testimony regarding her other functional limitations relating to all of her medically determinable impairments.

### C. Whether the ALJ Erred in Failing to Obtain Testimony From A Vocational Expert.

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 11 at 22-25 [Pl.'s Mem. of Law].) The Court adds the following analysis.

At step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert to determine whether there were jobs in the national economy that Plaintiff could perform. Instead, the ALJ decided that there were jobs in the national economy that Plaintiff could perform, relying solely on the Medical-Vocational guidelines. (T. 26.)

At step five of the sequential analysis, the Commissioner can usually meet her burden to establish that there is work existing in significant numbers in the national economy which the plaintiff could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from significant non-exertional limitations that significantly limit her employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (*citing Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986)). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id*. (*quoting Bapp*, 802 F.2d at 606). However, "the mere existence of a non-exertional

impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410-411 (2d Cir.2010) (*citing Bapp*, 802 F.2d at 603).

Because remand in necessary so that the ALJ may, among other things, properly assess Dr. Nocella's medical opinion and make a proper credibility analysis, remand is also necessary so that the ALJ may revisit her decision at step five of the sequential analysis after having reevaluated her RFC analysis in accordance with this Decision and Order. Should the ALJ determine that Plaintiff has "significant non-exertional limitations that significantly limit her employment opportunities," consultation with a vocational expert may be appropriate. *See Baldwin*, 2009 WL 4931363, at *27.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: July 23, 2015
Syracuse, NY

Glenn T. Suddaby
U.S. District Judge